UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

United States of America

v.

John W. Coronado, Jr.,

               Defendant.

**Decision and Order**

12-CR-83S

---

I.    INTRODUCTION AND BACKGROUND

     On September 13, 2016, defendant John Coronado Jr. ("Coronado") filed a motion to suppress statements that he made after his arrest on December 22, 2014. (Dkt. No. 321.) Among other issues raised in the motion, Coronado has argued that he "was represented by an attorney and should not have been subjected to custodial interrogation under the totality of the circumstances without notice to his counsel." (*Id.* at 3.) The motion came with an affidavit from attorney Kevin Spitler, who noted that he was appointed to represent Coronado in late February 2012 in connection with a grand jury subpoena served around that time, and that "my representation of Coronado did not cease, and I have remained as his attorney since my assignment and up to the present date." (*Id.* at 14.)

     On November 8, 2016, the Court issued a Decision and Order that set up a suppression hearing for Coronado's motion. (Dkt. No. 343.) With respect to the duration of Mr. Spitler's 2012 appointment, the Court explained that "when Magistrate Judge Schroeder covered arraignment for this Court on December 23, 2014, he re-qualified Coronado for counsel and assigned Assistant Federal Public Defender John Humann. Magistrate Judge Schroeder

presumably would not have conducted a second qualification and assignment if either he or the parties at the time had understood the February 14, 2012 assignment not to have expired." (*Id.* at 2.) Nonetheless, the Court ordered a suppression hearing for two reasons. Mr. Spitler's affidavit read as if he and Coronado maintained active communication about the case well beyond 2012 and through the time of Coronado's custodial interview. Coronado gave credence to the possibility of active communication when, at a status conference on October 18, 2016, he asserted that he had numerous conversations with Mr. Spitler after March 2012.

The suppression hearing so far has run in parts on December 5, 2016, December 21, 2016, and January 17, 2017. (Dkt. Nos. 360, 373, 383.) The hearing currently is scheduled to resume on February 13, 2017. As part of his hearing preparation, Coronado has filed a number of motions or memoranda for pre-hearing discovery. (Dkt. Nos. 346, 349, 354, 369, 372, 382.) Coronado has stated that he could not continue with the hearing until he received the Government's responses to his motions. (Dkt. No. 382 at 2.) The Government now has responded (Dkt. No. 389), but Coronado's statement about continuing with the hearing implies that he would want a ruling from the Court if the Government objected to any of the discovery demands. To keep the hearing on track for February 13, the Court now will examine each of Coronado's motions.

II.  DISCUSSION

   A.  *Motion for Discovery of November 22, 2016 (Dkt. No. 346)*

Coronado makes several requests in this motion. Coronado seeks the transcript of the arraignment that Magistrate Judge Schroeder held on December 23, 2014. That transcript now

has been filed at Docket No. 364.  Coronado seeks certain statements made and documents signed by him; the Court accepts the Government's representation that these materials already have been provided.

Coronado also wants the Government "to produce for examination any statement of each of these witnesses [*i.e.*, FBI Special Agent Sakovics, AUSA Frank Pimentel, and former AUSA Robert Moscati] that is in their possession that relates to the issues presented.  In order to avoid a recess to examine any such statements, pursuant to Rule 26.2(d) it is respectfully requested that these prior statements be produced prior to the hearing." (Dkt. No. 346 at 3.)  The Government responds that Coronado should not receive any information "other than the statements made and documents signed by the defendant in that regard (which have been provided).  All other information requested is either not discoverable under Rule 16, or attorney work product." (Dkt. No. 389 at 2–3.)

A review of Rule 26.2 of the Federal Rules of Criminal Procedure ("FRCP") is warranted.[1]  The rule begins with language that assumes that it would be invoked at trial.  "After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the

---

[1] For purposes of this Decision and Order, the Court will regard Rule 26.2 as equivalent to 18 U.S.C. § 3500 and what attorneys commonly refer to as "Jencks."  *See* FRCP 26.2 advisory committee's note to 1979 addition (noting that the addition "would place in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the Jencks Act).  Underlying this and certain other additions to the rules contemplated by S. 1437 is the notion that provisions which are purely procedural in nature should appear in the Federal Rules of Criminal Procedure rather than in Title 18."); *United States v. Bobadilla-Lopez*, 954 F.2d 519, 532 n.15 (9th Cir. 1992) ("Fed. R. Crim. Proc. 26.2 is virtually identical to the Jencks Act and is designed to incorporate the Act into the criminal rules."); *United States v. Fried*, 881 F.2d 1077, 1989 WL 88495, at *2 (6th Cir. 1989) (unpublished decision) ("The Jencks Act has been incorporated without substantive change into Fed. R. Crim. P. 26.2, although customary usage speaks only of the Jencks Act.").

defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." FRCP 26.2(a). Rule 26.2 has to be read, for Coronado's purposes, in conjunction with Rule 12(h), which states that "Rule 26.2 applies at a suppression hearing under Rule 12(b)(3)(C). At a suppression hearing, a law enforcement officer is considered a government witness." FRCP 12(h); *see also United States v. Gonzalez*, No. CRIM.A.97CR61RSP/GJD, 1998 WL 146407, at *2 (N.D.N.Y. Mar. 24, 1998). In turn, Assistant United States Attorneys are considered government agents for purposes of production under FRCP 26.2 since the same principle applies to the rule's statutory counterpart, 18 U.S.C. § 3500. *See United States v. Aviles*, 315 F.2d 186, 191 (2d Cir. 1963) (citations omitted). Subdivision (h) of FRCP 12 was added in 1983,[2] and the Advisory Committee on the Federal Rules of Criminal Procedure explained the significance of the change in a note:

> This change will enhance the accuracy of the factual determinations made in the context of pretrial suppression hearings. As noted in *United States v. Sebastian*, [497 F.2d 1267 (2nd Cir. 1974)], it can be argued most persuasively that the case for pre-trial disclosure is strongest in the framework of a suppression hearing. Since findings at such a hearing as to admissibility of challenged evidence will often determine the result at trial and, at least in the case of fourth amendment suppression motions, cannot be relitigated later before the trier of fact, pre-trial production of the statements of witnesses would aid defense counsel's impeachment efforts at perhaps the most crucial point in the case. * * * [A] government witness at the suppression hearing may not appear at trial so that defendants could never test his credibility with the benefits of Jencks Act material.
>
> The latter statement is certainly correct, for not infrequently a police officer who must testify on a motion to suppress as to the circumstances of an arrest or search will not be called at trial because he has no information necessary to the determination of defendant's guilt. *See, e.g., United States v. Spagnuolo*, [515 F.2d

---

[2] At the time, the subdivision was labeled 12(i).

> 818 (9th Cir. 1975)] (dissent notes that "under the prosecution's own admission, it did not intend to produce at trial the witnesses called at the pre-trial suppression hearing"). Moreover, even if that person did testify at the trial, if that testimony went to a different subject matter, then under rule 26.2(c) only portions of prior statements covering the same subject matter need be produced, and thus portions which might contradict the suppression hearing testimony would not be revealed. Thus, while it may be true, as declared in *United States v. Montos*, [421 F.2d 215 (5th Cir. 1970)], that "due process does not require premature production at pre-trial hearings on motions to suppress of statements ultimately subject to discovery under the Jencks Act," the fact of the matter is that those statements—or, the essential portions thereof—are not necessarily subject to later discovery.
>
>   Moreover, it is not correct to assume that somehow the problem can be solved by leaving the suppression issue "open" in some fashion for resolution once the trial is under way, at which time the prior statements will be produced. In *United States v. Spagnuolo*, *supra*, the court responded to the defendant's dilemma of inaccessible prior statements by saying that the suppression motion could simply be deferred until trial. But, under the current version of rule 12 this is not possible; subdivision (b) declares that motions to suppress "must" be made before trial, and subdivision (e) [now (d)] says such motions cannot be deferred for determination at trial "if a party's right to appeal is adversely affected," which surely is the case as to suppression motions. As for the possibility of the trial judge reconsidering the motion to suppress on the basis of prior statements produced at trial and casting doubt on the credibility of a suppression hearing witness, it is not a desirable or adequate solution. For one thing, as already noted, there is no assurance that the prior statements will be forthcoming. Even if they are, it is not efficient to delay the continuation of the trial to undertake a reconsideration of matters which could have been resolved in advance of trial had the critical facts then been available. Furthermore, if such reconsideration is regularly to be expected of the trial judge, then this would give rise on appeal to unnecessary issues of the kind which confronted the court in *United States v. Montos*, *supra*—whether the trial judge was obligated either to conduct a new hearing or to make a new determination in light of the new evidence.

FRCP 12(h) Advisory Committee's note to 1983 amendment. One other procedural issue needs a brief comment. Rule 26.2, on its face, is limited to "a party who did not call the witness." Technically, Coronado is the party calling the three witnesses in question. Again, however, Rule 26.2 primarily contemplates a trial, not a suppression hearing. The Court's experience provides

that at suppression hearings, defendants sometimes call family members or other minor witnesses for ancillary testimony, but the primary witnesses always are law enforcement agents. Given that Rule 12(h) already adapts Rule 26.2 to suppression hearings, defendants would face unfair prejudice in not being able to use Rule 26.2 if the Court did not make one more adaptation to deem law enforcement agents witnesses of the Government for the limited purpose of considering Rule 26.2 discovery at suppression hearings. The need for this adaptation has been recognized at least once before:

> The Court concurs that where a Defendant has called a law enforcement officer to testify in its behalf, that witness will be deemed a witness of the government and written statements of that witness in the possession of the government are producible, insofar as they relate to the subject matter of his testimony and are thus necessary to a party—including a co-defendant who did not call the witness—for impeachment purposes. Thus, the requirement in Fed. R. Crim. P. 26.2 that the motion for production be made by "a party who did not call the witness" is modified by 12(i) [now 12(h)] so as not to *automatically* preclude a defendant who has called a law enforcement officer from making a motion pursuant to Rule 26.2 with respect to the testimony of that officer.

*United States v. Duncan*, 712 F. Supp. 124, 130 (S.D. Ohio 1988).

Here, the Court agrees with the Government that Coronado may not use Rule 26.2 as a discovery device or as a way to attack the work-product privilege generally. One of the lines of reasoning in Coronado's demand, however, concerns witness impeachment. Assuming *arguendo* that Coronado was represented by counsel when he was interrogated on December 22, 2014, he is pursuing in the hearing whether the Government knew of the representation and decided to interrogate him anyway, in violation of the Sixth Amendment. If the Government witnesses deny any knowledge that Coronado was represented, and no information in the Government's file suggests otherwise, then so be it; Coronado would have to figure out what to do from that point.

6

If information in the Government's file does suggest knowledge that Coronado was represented then Coronado needs to know that, for impeachment purposes. The work-product doctrine does not bar the production of information otherwise producible under FRCP 26.2. *See Goldberg v. United States*, 425 U.S. 94, 107–08 (1976) (assessing 18 U.S.C. § 3500). The holding in *Goldberg* is made a little less applicable here by the Supreme Court's third reason for disclosure, that "the lawyer is not called upon to be a witness." *Id.* at 107. Nonetheless, in the unusual scenario in which the lawyer *is* the witness and the lawyer's notes are arguably witness statements, the second reason from *Goldberg* should prevail: "[T]here is a clearly legitimate and congressionally recognized purpose for disclosure under the Jencks Act. The Act requires disclosure of all statements for use in impeaching witnesses and is thus designed to further the fair and just administration of criminal justice." *Id.* (citation omitted); *see also United States v. Clemens*, 793 F. Supp. 2d 236, 252 (D.D.C. 2011) ("*Goldberg* and [*Saunders v. United States*, 316 F.2d 346 (D.C. Cir. 1963)] stand for the proposition that any attorney work-product materials containing either a statement approved or adopted by the witness or a substantially verbatim recital of an oral statement made by the witness and recorded contemporaneously with the making of such oral statement do not constitute 'opinion' work product. This is because 'statements' under the Jencks Act do not include protected material flowing from the attorney's mental processes.") (internal quotation and editorial marks and citations omitted). To hold otherwise would risk putting Coronado in a situation in which he could not access potential impeachment information now because the Government did not produce it and could not access it at trial because it is not relevant to the ultimate question of

7

guilt or innocence. The Advisory Committee warned against this very scenario in its notes accompanying Rule 12.

      The next step is to define what the Government needs to produce to Coronado. Information about whether the Government knew that Coronado might have counsel is producible, as explained above, to the extent that it fits the definition of Rule 26.2(f). More specifically, the Government is directed to produce any statements in its file authored, made, or adopted by the three witnesses in question and that indicate, in any way, whether the Government knew or believed prior to Coronado's interrogation that Coronado had counsel. The Government will produce the information no later than 5:00 PM on February 10, 2017. The Government may use redactions as needed to protect any other information. *See Goldberg*, 425 U.S. at 106 ("Proper application of the [Jencks] Act will not compel disclosure of a Government lawyer's recordation of mental impressions, personal beliefs, trial strategy, legal conclusions, or anything else that could not fairly be said to be the witness' own statement.") (internal quotation marks omitted). Protected information will include "[a]ny information and guidance that the government obtained from the Department of Justice Ethics Advisor, or the United States Attorneys Office Internal Professional Responsibility Liaison as to the interrogation, after indictment and before arraignment, of the defendant, both when the defendant is represented by counsel and when a defendant is not represented by counsel." (Dkt. No. 346 at 3–4.) If any policy-type information that Coronado seeks can be found in the United States Attorneys' Manual then he may access it there. Coronado's request for protected information otherwise is out of bounds; the very phrase "information and guidance" is a red flag for internal legal advice and trial strategy that has nothing

8

to do with the factual question of what the Government knew or believed about Coronado's representation by the time of the interrogation.

In sum, the Court grants Coronado's motion in part to direct the Government to produce any statements in its file authored, made, or adopted by the three witnesses in question and that indicate, in any way, whether the Government knew or believed prior to Coronado's interrogation that Coronado had counsel. The Court denies Coronado's motion in all other respects.

### B. Motion Pursuant to Privilege Rules (Dkt. No. 349)

In this brief motion, Coronado sought to limit any cross-examination of witnesses Kevin Spitler and Fonda Kubiak to "the limited purpose of showing representation." (Dkt. No. 349 at 2.) The testimony of these witnesses already has occurred, and any issues that might have arisen about cross-examination appear to have been addressed in the courtroom. The Court accordingly denies the motion as moot.

### C. Preliminary Statement in Support of Motion (Dkt. No. 354)

This filing from Coronado is not docketed as a motion and does not appear to seek any particular relief. The motion mentioned in the document's title is unspecified; the Court is not sure which of Coronado's several pending motions is the motion referenced. The document reads like a preview of what Coronado's post-hearing briefing will be. The Court will not address the filing further except to emphasize that Coronado will have an opportunity to file post-hearing briefing once all testimony concludes.

### D. *Motion for Discovery (Dkt. No. 369)*

The clearest part of this short motion is Coronado's repeated request to have the Government bring its entire file for this case to the Court for an *in camera* examination. With all due respect to Coronado's counsel, the rest of the motion is a little confusing. There is a reference to a November 28, 2012 letter from the Federal Public Defender's Office; the Court is not aware of any letter with that date, unless Coronado mistakenly wrote the wrong date when referring to a February 28, 2012 letter. (Dkt. No. 321-1 at 10.) There is a reference to an FBI 302 form that Coronado has not received but "certainly" (Dkt. No. 369 at 2) must exist. There also is a reference to an attempted interview of Coronado that occurred on February 14, 2012. Coronado mentioned this interview in a prior affidavit as the event that prompted his appearance before the Court to receive an assignment of counsel. (Dkt. No. 321 at 12.) If the attempted interview occurred before any request or assignment of counsel then the Court does not understand how any resulting FBI 302 form would help resolve whether the Government knew or believed that Coronado had counsel as of December 22, 2014. The only way in which any such FBI 302 form would be helpful would be in connection with what appears to be emerging as Coronado's principal argument for suppression: The Court's assignment of counsel on February 14, 2012 never expired, as a matter of law, regardless of the absence of active communication between Coronado and counsel that has started to become apparent. Even then, the FBI 302 form in question would not help much, because the Government readily has conceded or would concede that Coronado did not have counsel when the attempted interview began on February 14, 2012;

10

that Coronado terminated the attempted interview by asking for counsel; and that Coronado had counsel later that day.

In any event, the Court does not need to resolve any confusion surrounding this motion. As discussed above, the Court already is directing the Government to produce any statements that would be directly relevant to Coronado's motion to suppress. The Court accordingly denies this motion.

### E. Motion for Supplemental Discovery (Dkt. No. 372)

As far as the Court can tell, this motion consists of three discovery-related requests. Coronado asks that certain discovery materials furnished by the Government be docketed and made part of the record for possible appellate purposes. Coronado already docketed part of the materials with the motion. The docketed material consists of an email message generated by the Government that stated, in the present tense, that Coronado "is represented by counsel" as of April 27, 2012, when the email message was written. (Dkt. No. 372-1 at 2.) That email message is potentially interesting because it postdates the original indictment of March 6, 2012, a date by which the grand jury subpoena that prompted the assignment of counsel otherwise could be considered to have run its course.[3] Nonetheless, the Court would prefer not to have the docketing of discovery materials untethered to any motion or briefing. Instead, Coronado will have leave to

---

[3] *Compare with* Dkt. No. 328 at 4 ("[W]hile there is no doubt that in February 2012 Coronado was assigned counsel for the limited purpose of representing him in connection with his possible grand jury appearance at that time, that assignment did not blossom into an unabridged Sixth Amendment right going forward in perpetuity as implied by Coronado."). The Court might yet decide that Coronado's representation did not "go forward in perpetuity." Nonetheless, and without prejudice to further argument and examination, the email message in question does appear to indicate that the Government acknowledged that Coronado's representation lasted for at least a short time after the original grand jury proceedings concluded, which in turn might open the question of what event would then have prompted the Government to change its view.

11

attach relevant discovery materials to his eventual post-hearing briefing. The Government is on notice that Coronado might do just that and should alert the Court in advance as to whether any of those materials would need to be filed under seal.

Next, Coronado seeks a copy of a certain application for a pen register and trap and trace device. To the extent that the Government has not furnished a copy of the application by now, the Court will place the application within its previous directive, *supra*, to furnish statements pertaining to any Government knowledge about Coronado's representation by counsel.

Third, Coronado seems to demand discovery materials pertaining to whether certain City of Buffalo police officers knew about the grand jury subpoena, attempted interview, and appointment of counsel in February 2012. (Dkt. No. 372 at 3.) If Coronado calls those officers as witnesses then he may question them about their knowledge. The Court will place these officers within the scope of its directive, *supra*, to furnish statements pertaining to any Government knowledge about Coronado's representation by counsel. Addressing the motion further would appear to be unnecessary at this time.

In short, the Court grants this motion in part 1) to ensure that its Rule 26.2 directive, to the extent not done already, includes the pen register application and the police officers referenced in the motion; and 2) to give Coronado leave to attach relevant discovery materials to his eventual post-hearing briefing, subject to any Government concerns about filing those materials under seal. The Court otherwise denies the motion.

### F. *Motions to Compel Response to Discovery Motions (Dkt. Nos. 376, 382)*

In these motions, Coronado simply wanted the Government to respond to the discovery motions that he had filed up to that point. The Government has since filed its response. The Court denies these motions as moot.

### III. CONCLUSION

The Court grants Coronado's pending discovery motions (Dkt. Nos. 346, 349, 369, 372, 382) in part and denies them in part as explained above.

SO ORDERED.

>  */s Hugh B. Scott*
> HONORABLE HUGH B. SCOTT
> UNITED STATES MAGISTRATE JUDGE

DATED: February 7, 2017